Brandt L. Wolkin, Esq.,        SBN 112220
Dawn A. Silberstein, Esq.,  SBN 167936
Wolkin · Curran, LLP
555 Montgomery Street, Suite 1100
San Francisco, California 94111
Telephone:     (415) 982-9390
Facsimile:      (415) 982-4328
E-mail:  bwolkin@wolkincurran.com
E-mail:  dsilberstein@wolkincurran.com

Attorneys for plaintiff
JDS BUILDERS GROUP, INC.

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JDS BUILDERS GROUP, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SCOTTSDALE INSURANCE COMPANY, an Ohio corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br>**(1) BREACH OF CONTRACT;**<br>**and**<br>**(2) BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**<br>*And*<br>**DEMAND FOR JURY TRIAL** |

Plaintiff, JDS BUILDERS GROUP, INC. ("JDS"), for its Complaint against defendants, and each of them, alleges as follows:

**FEDERAL JURISDICTION AND VENUE**

1. This Court has original jurisdiction over this action pursuant to 28 U.S.C. Section 1332, because there is complete diversity of citizenship between JDS and defendants and the amount in controversy exceeds $75,000.

2. Venue is proper in the Northern District of California, because a substantial portion of the events and omissions giving rise to JDS' claims occurred in the City and County of San Francisco, California.

**PARTIES**

3.   Plaintiff, JDS, at all times mentioned herein is, and was, a corporation organized under the laws of the State of California, having its principal place of business in Winters, California.  At all times mentioned herein, JDS was a contractor duly licensed to conduct business in the State of California.

4.   Plaintiff is informed and believes and, based thereon, alleges that defendant SCOTTSDALE INSURANCE COMPANY ("Scottsdale"), at all times mentioned herein is, and was, a corporation organized under the laws of the State of Ohio with its principal place of business in Scottsdale, Arizona.  At all times referenced herein, Scottsdale was conducting business as a foreign insurer doing business in the State of California under Insurance Code section 1760, *et seq.,* by issuing and delivering policies of insurance to residents of California through a surplus lines broker.

5.   Plaintiff is informed and believes and, based thereon, alleges that DOES 1 through 10 are insurers licensed to do business in the State of California.  The true names and capacities, whether individual, corporate, associate or otherwise, of the defendants named herein as DOES 1 through 10 are unknown to Plaintiff at this time, and for that reason Plaintiff sues said defendants by fictitious names.  Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of said defendants when they have been ascertained.

6.   Plaintiff is informed and believes and, based thereon, alleges that each of the fictitiously named defendants designated as DOES 1 through 10 are in some manner legally responsible to Plaintiff for the acts, omissions and damages set forth in this Complaint.  Plaintiff will request leave to amend this Complaint to set forth the true names and capacities of these DOE defendants when the same are ascertained.  The defendants identified above and DOES 1 through 10, inclusive, are hereafter sometimes referred to individually and collectively as "Defendants."

///

## NATURE OF THE ACTION

7. This is an action in which JDS alleges that the Defendants breached their contractual obligations and breached the covenant of good faith and fair dealing under that certain policy of insurance more specifically set forth below.

## GENERAL ALLEGATIONS

### The Scottsdale Policy:

8. Defendant Scottsdale issued a policy of general liability insurance to JDS, number BCS0022046, effective May, 2, 2010 through May 2, 2011 (the "Scottsdale Policy").

9. The Scottsdale Policy generally provides coverage for bodily injury and property damage under form CG 00 01 12 07, Section I-COVERAGE, subsection 1. Insuring Agreement, as set forth below:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

10. The Scottsdale Policy defines "property damage" substantively as set forth below:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

///

///

3.

COMPLAINT; AND DEMAND FOR JURY TRIAL                CASE NO.

    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

11. In addition, the Scottsdale Policy provides coverage under the SUPPLEMENTARY PAYMENTS – COVERAGES A AND B. Section 2 of this coverage part provides that:

> If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:
> 
> a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";
> 
> b. This insurance applies to such liability assumed by the insured;
> 
> c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";
> 
> d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;
> 
> e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and
> 
> f. The indemnitee:
> 
>     (1) Agrees in writing to:

///

      (a)    Cooperate with us in the investigation, settlement or defense of the "suit";

      (b)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

      (c)    Notify any other insurer whose coverage is available to the indemnitee; and

      (d)    Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

  (2)    Provides us with written authorization to:

      (a)    Obtain records and other information related to the "suit"; and

      (b)    Conduct and control the defense of the indemnitee in such "suit",

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury and Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or

settlements or the conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

**The Claim:**

12. In early 2010, JDS entered into a contract with the San Francisco Unified School District ("SFUSD") to perform certain repairs and repainting of Abraham Lincoln High School ("Lincoln High") located in San Francisco, California. The contract between JDS and SFUSD was entitled Abraham Lincoln High School 2010 Modernization Project, SFUSD Project No. 10766 ("Contract"). The Contract involved the repainting of the interior and exterior walls of Lincoln High and included the caulking and repair of exterior stucco cracks. JDS subcontracted with John Bell dba Bell Painting to perform the repainting and site preparation work under the Contract.

13. The work appeared to proceed properly and SFUSD filed a formal Notice of Completion in October of 2010. However, following the filing of the Notice of Completion and just prior to issuance of the final retention payment, a large section of paint fell off of one of the exterior walls at Lincoln High. As a result, SFUSD began an investigation of all work under the Contract and allegedly discovered numerous failures throughout the exterior walls of the school. Those failures included extensive micro-cracks, large paint sags and paint falling off from the various walls, which resulted in water intrusion and consequential damage to the building structures.

14. As a result, a dispute arose between SFUSD and JDS as to JDS' responsibility for the property damage resulting from the above failures and SFUSD withheld the final retention amount due to JDS under the Contract.

15. JDS timely tendered the SFUSD claim to Scottsdale in or about December of 2010. Scottsdale investigated the claim and, by letter dated August 16, 2011, agreed to defend JDS against the SFUSD claim. However, despite having agreed to defend JDS, Scottsdale unreasonably failed and refused, and continues to fail and refuse, to resolve the SFUSD claim on behalf of JDS.

6.
COMPLAINT; AND DEMAND FOR JURY TRIAL                    CASE NO.

16. As a result of the ongoing dispute between JDS and SFUSD, SFUSD also began to withhold payments due to JDS under a separate contract entered into for repairs to another school in the SFUSD. In addition, SFUSD made a claim against JDS' performance bond.

17. As a result of the loss of revenue caused by SFUSD's retention of payments due to JDS, JDS was unable to pay its subcontractors for work performed under their subcontracts. As a direct result, the subcontractors made claims under JDS' payment bonds for their respective projects or filed lawsuits directly against JDS in the San Francisco Superior Court.

18. As a further result of SFUSD's claim against JDS' performance bond and the claims of the subcontractors against the payment bonds, JDS was no longer considered a bondable risk by its surety and was unable to obtain the bonds necessary to bid on future projects, further adding to JDS' financial distress.

19. In addition, as a result of the lawsuits filed by JDS's subcontractors against JDS and its surety under the payment and performance bonds, on October 2, 2012, JDS' surety, Travelers Casualty and Surety Company of America ("TRAVELERS") also tendered its defense to Scottsdale under the SUPPLEMENTAL PAYMENTS coverage of the Scottsdale Policy and requested that Scottsdale conduct and control the defense of JDS' surety as an indemnitee. However, despite being provided with a copy of the General Agreement of Indemnity between JDS and TRAVELERS, a copy of which is attached hereto as Exhibit A and incorporated herein as though fully set forth, Scottsdale disclaimed coverage under the Scottsdale Policy, thereby further increasing JDS' liability to its surety bond company under the terms of the indemnity agreement. As of this date, JDS' surety has paid in excess of $1,300,000 under the surety bonds and additional sums in defense of claims of the SFUSD.

20. As a direct and proximate result of Scottsdale's refusal to defend and indemnify JDS' surety under the SUPPLEMENTAL PAYMENTS coverage of the

7.

COMPLAINT; AND DEMAND FOR JURY TRIAL                    CASE NO.

Scottsdale Policy, JDS is further exposed to its surety company for these damages under the terms of the General Agreement of Indemnity, a copy of which is attached hereto as Exhibit A.

21. As a further direct result of Scottsdale's refusal to resolve this matter, on May 28, 2013, SFUSD filed a formal complaint against JDS and Scottsdale in the San Francisco Superior Court entitled *San Francisco Unified School District v. JDS Builders Group, Inc., et al.*, Case No. CGC-13-531742 ("Underlying Action"). The SFUSD complaint alleges causes of action for breach of the contract, negligence, breach of covenant and declaratory relief.

22. During the period of time between JDS' first tender of the claim to Scottsdale and the filing of the SFUSD complaint in May of 2013, JDS is informed and believes that Scottsdale had knowledge of facts necessary to determine the scope of the loss and the potential for coverage under the Scottsdale Policy. However, it failed and refused and continues, as of the date of the filing of this complaint, to refuse to reasonably settle SFUSD's claims against JDS.

23. Scottsdale has been advised that its failure to adequately defend and indemnify JDS has caused significant hardship to JDS, as well as to JDS' director and executive officer, John Siracusa, personally.

24. As a result of Scottsdale's failure to timely resolve the SFUSD claim and the Underlying Action, SFUSD withheld in excess of $800,000 due to JDS on the Lincoln High and other SFUSD projects.

25. In addition, as a result of the costs incurred by JDS' surety as a result of the SFUSD performance bond claim and the claims of JDS' subcontractors against its payment bonds, JDS' surety has a right under the terms of the general indemnity agreement signed by JDS and JDS' director and executive officer, John Siracusa, to attach all the assets of JDS and John Siracusa, including Mr. Siracusa's private home and any sums due to JDS under the Contract to compensate the surety for sums paid and costs incurred by the surety under the bonds.

26. As a result of the indemnity agreement JDS was required to enter into by its surety in order to obtain the required bonds for the Lincoln High and other SFUSD projects, JDS and John Siracusa, personally, are on the verge of bankruptcy.

27. Scottsdale has been advised of the significant financial hardship its conduct has placed upon JDS and Mr. Siracusa. Despite this knowledge and knowledge of facts sufficient to establish coverage for the SFUSD claim under the Scottsdale Policy, Scottsdale continues to refuse to resolve the SFUSD claim and the Underlying Action on behalf of its insured.

28. Had Scottsdale investigated the SFUSD claim and defended JDS in good faith, it would have recognized a duty to remove its insured from harm's way by making reasonable efforts to resolve the SFUSD claim and Underlying Action and by accepting the tender of defense of JDS' surety under the SUPPLEMENTARY PAYMENTS coverage section of the Scottsdale Policy.

29. JDS is informed and believes that Scottsdale and Defendants failed and refused to:

    a. Conduct a full and complete investigation of the SFUSD claim;

    b. Conduct a full and complete investigation of the Underlying Action;

    c. Indemnify JDS from the claims asserted in the SFUSD claim;

    d. Indemnify JDS from the claims asserted in the Underlying Action;

    e. Promptly respond to communications regarding the claim;

    f. Reasonably and promptly negotiate the settlement of the SFUSD's claims against JDS; and

    g. Defend JDS' surety as an indemnitee under the SUPPLEMENTARY PAYMENTS coverage section of the Scottsdale Policy.

30. Further, Scottsdale and Defendants misrepresented and intentionally concealed the coverage afforded by the Scottsdale Policy.

31. Had Scottsdale conducted a full and complete investigation of the claims asserted by SFUSD, it would have determined that the SFUSD claim and

Underlying Action alleged claims for covered "property damage" and loss of use under the Scottsdale Policy.

32. Had Scottsdale honored the terms of the Scottsdale Policy and provided the coverage afforded thereby to JDS, it would have promptly resolved the SFUSD claim and Underlying Action on JDS' behalf.

33. JDS has performed all of its obligations under the Scottsdale Policy referenced above, except for those obligations which, because of the breach of Scottsdale, or any of them, JDS has been excused or prevented from performing.

## FIRST CAUSE OF ACTION

### (Breach Of Contract)

34. Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 33 as though fully set forth herein.

35. Plaintiff is informed and believes that Defendants, and each of them, breached their obligations under the policies of insurance issued to JDS by:

    a. Failing to conduct a full and complete investigation of the SFUSD claim;

    b. Failing to conduct a full and complete investigation of the Underlying Action;

    c. Failing to indemnify JDS from the claims asserted in the SFUSD claim;

    d. Failing to indemnify JDS from the claims asserted in the Underlying Action;

    e. Failing to promptly respond to communications regarding the claim;

    f. Failing to reasonably and promptly negotiate the settlement of the SFUSD's claim and Underlying Action on behalf of JDS; and

    g. Failing to defend JDS' surety as an indemnitee under the SUPPLEMENTARY PAYMENTS coverage section of the Scottsdale Policy.

10.

COMPLAINT; AND DEMAND FOR JURY TRIAL    CASE NO.

36. As a direct and proximate result of Defendants' wrongful denial of coverage for the claims asserted against JDS in the SFUSD claim and the Underlying Action, JDS and John Siracusa are on the verge of bankruptcy. They continue to suffer mounting financial hardship and are at risk of losing all of their assets, including Mr. Siracusa's home.

37. As a direct and proximate result of Defendants' wrongful denial of coverage for the claims asserted against JDS in the SFUSD claim and the Underlying Action, JDS has been and continues to be damaged in an amount in excess of the jurisdictional limits of this court.

38. JDS is informed and believes that the denial of benefits, as alleged in this complaint, was vexatious and without reasonable cause. Pursuant to California Insurance Code section 1619, JDS is entitled to reasonable attorney fees incurred in prosecuting this action in an amount to be proved at trial.

39. JDS is informed and believes that the denial of benefits, as alleged in this complaint, was in bad faith and without probable cause. Accordingly, JDS seeks recovery under *Brandt v. Superior Court* of its fees and costs incurred in this matter in order to receive from Defendants the policy benefits owed to them.

## SECOND CAUSE OF ACTION

### (Breach of the Covenant of Good Faith and Fair Dealing)

40. JDS hereby incorporates by reference each and every allegation contained in paragraph 1 through 39 as though fully set forth herein.

41. JDS is informed and believes that the Defendants, and each of them, breached the implied covenant of good faith and fair dealing by unreasonably and without proper cause failing and refusing to conduct a full and complete investigation and by willfully concealing and fraudulently misrepresenting the coverage afforded by the applicable policies in order to wrongfully deny coverage for the claims asserted by SFUSD and the Underlying Action.

///

11.
COMPLAINT; AND DEMAND FOR JURY TRIAL          CASE NO.

42. Defendants, and each of them, wrongfully refused to indemnify JDS in the SFUSD claim and the Underlying Action.

43. The denial of the benefits claimed by JDS under the Scottsdale Policy or other policies of insurance issued by Defendants, and each of them, was done by Defendants without reasonable cause. Defendants knew that the claims asserted by the SFUSD and the Underlying Action were covered under the Defendants' policies and, in particular, the Scottsdale Policy, yet refused to reasonably resolve the SFUSD claims and Underlying Action, despite the opportunity to do so.

44. As a direct and proximate result of Defendants' wrongful denial of coverage for the claims asserted against JDS in the SFUSD claim and the Underlying Action, JDS has been and continues to be damaged in an amount in excess of the jurisdictional limits of this court.

45. JDS is informed and believes that Defendants intentionally engaged in a course of conduct that was intended to oppress JDS and to dissuade JDS from seeking benefits due to it under the policies by intentionally misrepresenting the benefits due to JDS under their respective policies.

46. The refusal of Defendants, and each of them, to carry out their obligations under their insurance policies and the California Insurance Code to promptly and fully investigate, defend, indemnify and communicate their coverage positions with the insureds, and the acts of their agents, were all done with a conscious disregard of the rights of the JDS to receive the benefits due it under the policies. These acts were done with the knowledge and approval and ratification of the Defendants, and each of them. These acts continued even after JDS, and others on JDS' behalf, protested to the Defendants. JDS, therefore, is entitled to punitive damages.

## **PRAYER**

1. For damages according to proof at trial, including any amount paid in settlement or satisfaction of judgment the SFUSD claim and the Underlying Action;

2.	For attorney fees and costs incurred in bringing this action pursuant to California Insurance Code section 1619 and *Brandt v. Superior Court*;

3.	For attorney fees incurred in obtaining policy benefits as provided by law;

4.	For punitive damages in an amount to deter and make an example of Defendants as established by proof at trial;

5.	For costs of suit herein;

6.	For pre- and post- judgment interest; and

7.	For such other and further relief as the Court may determine just and proper.

Dated:   January 21, 2015				WOLKIN • CURRAN, LLP

						By: */s/ Dawn A. Silberstein*
						       Brandt L. Wolkin
						       Dawn A. Silberstein

						Attorneys for plaintiff JDS GROUP, INC.

# **DEMAND FOR JURY TRIAL**

Plaintiff, JDS Group, Inc., hereby demands trial by jury in this action.

Dated:  January 21, 2015                                WOLKIN • CURRAN, LLP

By: */s/ Dawn A. Silberstein*
Brandt L. Wolkin
Dawn A. Silberstein

Attorneys for plaintiff JDS GROUP, INC.