JAMES R. TENERO  (SBN 201023)
JOSHUA S. LEACH  (SBN 209061)
SELMAN BREITMAN LLP
33 New Montgomery, Sixth Floor
San Francisco, CA  94105
Telephone        :          (415) 979-0400
Facsimile        :          (415) 979-2099
Email             :          jtenero@selmanbreitman.com
                  :          jleach@selmanbreitman.com

SHERYL W. LEICHENGER  (SBN 161688)
SELMAN BREITMAN LLP
11766 Wilshire Boulevard, Sixth Floor
Los Angeles, CA 90025-6538
Telephone        :          (310) 445-0800
Facsimile        :          (310) 473-2525
Email             :          sleichenger@selmanbreitman.com

Attorneys for Defendant
SCOTTSDALE INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA-SAN FRANCISCO DIVISION

| | |
|---|---|
| JDS BUILDERS GROUP, INC., a California corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>SCOTTSDALE INSURANCE COMPANY, an Ohio Corporation,<br><br>                    Defendant. | Case No. 3:15-CV-00297-VC<br><br>SCOTTSDALE INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6)<br><br>Date        :          April 16, 2015<br>Time        :          10:00 a.m.<br>Judge       :          Hon. Vince Chhabria<br>Ctrm.       :          4<br><br>Complaint Filed:     January 21, 2015<br>Trial Date:          None Set |

          NOTICE IS HEREBY GIVEN THAT on April 16, 2015 at 10:00 a.m., in Courtroom 4, or as soon as thereafter as the matter may be heard, in the above-entitled court, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, CA 94102, defendant Scottsdale Insurance Company ("Scottsdale") will, and hereby does, move the Court to dismiss Scottsdale from this lawsuit, with prejudice.

1

Selman Breitman LLP
ATTORNEYS AT LAW

309387.1 380.30895

Selman Breitman LLP
ATTORNEYS AT LAW

1    In this action, JDS alleges causes of action for breach of the insurance contract and

2    breach of the covenant of good faith and fair dealing.  With regard to these causes of action, JDS'

3    complaint is deficient because:

4        1.    Under controlling California case law, an insured has no cause of action against

5    an insurer for "failure to settle" unless and until a judgment has been entered; since no judgment

6    has been entered, JDS cannot maintain a cause of action against Scottsdale for breach of the duty

7    to settle (*Hamilton v. Maryland Cas. Co.* (2002) 27 Cal.4th 718, 727);

8        2.    Scottsdale properly denied Travelers' tender of the defense of the subcontractors'

9    collections suits, because: (a) Travelers was not entitled to a defense under the Supplementary

10   Payments provisions (*See*, *Bernstein v. Consolidated American Ins. Co.* (1995) 37 Cal.App.4th

11   763); and, (b) in any event, the subcontractors' collections suits did not allege "property damage"

12   caused by an "occurrence" (*Giddings v. Industrial Indemnity Co.* (1980) 112 Cal.App.3d 213,

13   217); and

14       3.    Because JDS has failed to allege a viable breach of contract claim, JDS cannot

15   maintain its claim for breach of the covenant of good faith and fair dealing (*Waller v. Truck Ins.*

16   *Exchange, Inc.* (1995) 11 Cal.4th 1, 36.)

17       For the foregoing reasons, and as discussed in the accompanying memorandum of

18   points and authorities, Scottsdale respectfully requests that the Court dismiss Scottsdale from this

19   action, with prejudice.

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28

309387.1 380.30895

1    This motion is based on this notice of motion and motion; the accompanying

2   memorandum of points and authorities; the request for judicial notice submitted herewith; and on

3   the papers and pleading on file in this action; and on such other and further oral and documentary

4   evidence as may be presented at the hearing of this Motion.

5

6   DATED:  March 4, 2015                    SELMAN BREITMAN LLP

7

8

9                                            By: _____
                                                 JOSHUA S. LEACH
10                                               Attorneys for Defendant
                                                 SCOTTSDALE INSURANCE
11                                               COMPANY, an Ohio Corporation,

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCOTTSDALE'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6)
-CASE NO. 3:15-CV-00297-VC

309387.1 380.30895

JAMES R. TENERO  (SBN 201023)
JOSHUA S. LEACH  (SBN 209061)
Selman Breitman LLP
33 New Montgomery, Sixth Floor
San Francisco, CA  94105
Telephone      :        (415) 979-0400
Facsimile      :        (415) 979-2099
Email           :        jtenero@selmanbreitman.com
                                jleach@selmanbreitman.com

SHERYL W. LEICHENGER  (SBN 161688)
Selman Breitman LLP
11766 Wilshire Boulevard, Sixth Floor
Los Angeles, CA 90025-6538
Telephone      :        (310) 445-0800
Facsimile      :        (310) 473-2525
Email           :        sleichenger@selmanbreitman.com

Attorneys for Defendant
SCOTTSDALE INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA-SAN FRANCISCO DIVISION

| | |
|---|---|
| JDS BUILDERS GROUP, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SCOTTSDALE INSURANCE COMPANY, an Ohio corporation,<br><br>Defendant. | CASE NO. 3:15-CV-00297-VC<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SCOTTSDALE INSURANCE COMPANY'S MOTION TO DISMISS PURSUANT TO FRCP RULE 12(B)(6)<br><br>Date          :        April 16, 2015<br>Time          :        10:00 a.m.<br>Judge        :        Hon. Vince Chhabria<br>Ctrm.        :        4<br><br>Complaint Filed:        January 21, 2015<br>Trial Date:        None set |

Selman Breitman LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ................................................................................................. 1

II.   ALLEGATIONS.................................................................................................. 2

    A.   The Insured Performed Its Work During Summer 2010. ............................... 2

    B.   In October 2010, The District Discovers The Alleged Defect. ..................... 2

    C.   In August 2011, Scottsdale Agrees To Defend JDS Against The District's Pre-Suit Claim. ............................................................................... 3

    D.   JDS Fails To Pay Its Subcontractors............................................................. 3

    E.   In May 2013, The District Files Suit Against JDS. ...................................... 4

    F.   Causes Of Action.......................................................................................... 4

    G.   Summary Of Allegations. ............................................................................. 4

III.  LEGAL STANDARD.......................................................................................... 4

IV.   DISCUSSION ...................................................................................................... 5

    A.   Scottsdale's Duties Owed To JDS Under Its Policy. .................................... 5

    B.   JDS Has Not Alleged A Breach of The Insurance Contract.......................... 6

        (1)   JDS Concedes That Scottsdale Is Defending The Suit........................ 6

        (2)   JDS Cannot Allege That Scottsdale Breached A Duty To Settle Unless And Until A Judgment Is Entered................................... 6

    C.   JDS Has Failed To Allege A Breach Of Contract Flowing From Scottsdale's Refusal To Defend Traveler........................................................ 8

        (1)   A Payment Bond Is Not An "Insured Contract". ................................ 9

        (2)   The Subcontractor's Collections Claims Did Not Allege "Property Damage" Caused By An "Occurrence". ............................... 9

    D.   JDS Cannot Sustain A Bad Faith Claim Without A Viable Breach Of Contract Claim........................................................................................ 10

V.    CONCLUSION.................................................................................................... 11

i

Selman Breitman LLP
ATTORNEYS AT LAW

309339.2 380.30895

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*
(2009) 556 U.S. 662 ...................................................................................5

*Balistreri v. Pacifica Police Dept.*
(9th Cir. 1990) 901 F.2d 696 .....................................................................4

*Bell Atlantic Corp. v. Twombly*
(2007) 550 U.S. 544 ...................................................................................5

*Daniels-Hall v. National Educ. Ass'n*
(9th Cir. 2010) 629 F.3d 992 .....................................................................5

*Papasan v. Allain*
(1986) 478 U.S. 265 ...................................................................................5

*Robertson v. Dean Witter Reynolds, Inc.*
(9th Cir. 1984) 749 F.2d 530 .....................................................................4

**State Cases**

*Aerojet-General Corp. v. Transport Indem. Co.*
(1997) 17 Cal.4th 38 ..............................................................................5-6

*Bernstein v. Consolidated American Ins. Co.*
(1995) 37 Cal.App.4th 763 .....................................................................2, 9

*Giddings v. Industrial Indemnity Co.*
(1980) 112 Cal.App.3d 213 ...................................................................2, 10

*Golden Eagle Ins. Co. v. Insurance Co. of the West*
(2002) 99 Cal.App.4th 837 .........................................................................9

*Golden Eagle Ins. Corp. v. Cen-Fed, Ltd.*
(2007) 148 Cal.App.4th 976 .....................................................................10

*Griffin Dewatering Corp. v. Northern Ins. Co. of N.Y.*
(2009) 176 Cal.App.4th 172 .......................................................................5

*Hamilton v. Maryland Cas. Co.*
(2002) 27 Cal.4th 718 ...........................................................................2, 7-8

Selman Breitman LLP
ATTORNEYS AT LAW

309339.2 380.30895

*James 3 Corp. v. Truck Ins. Exchange*
    (2001) 91 Cal.App.4th 1093 ..................................................................7

*Quan v., Truck Ins. Exch.*
    (1998) 67 Cal.App.4th 583 ..................................................................10

*Safeco Ins. Co. v. Superior Court*
    (1999) 71 Cal.App.4th 782 ..................................................................7

*Shell Oil Co. v. Winterthur Swiss Ins. Co.*
    (1993) 12 Cal.App.4th 715 ..................................................................10

*St. Paul Fire & Marine Ins. Co. v. Sup. Ct. (County of Yuba)*
    (1984) 161 Cal.App.3d 1199 ..................................................................10

*Vandenberg v. Sup. Ct.*
    (1992) 21 Cal. 4th 815 ..................................................................9

*Waller v. Truck Ins. Exchange, Inc.*
    (1995) 11 Cal.4th 1 ..................................................................2, 10

*Western Polymer Technology, Inc. v. Reliance Ins. Co.*
    (1995) 32 Cal.App.4th 14 ..................................................................7

**Miscellaneous**

Croskey, Heeseman and Imre, Cal. Prac. Guide Ins. Lit. Ch. 7A § 7:4
    (West 2013) ..................................................................5

MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF SCOTTSDALE'S MOTION TO DISMISS-
CASE NO. 3:15-CV-00297-VC

Selman Breitman LLP
ATTORNEYS AT LAW

309339.2 380.30895

Selman Breitman LLP
ATTORNEYS AT LAW

# I.  **INTRODUCTION**

The present action arises out of a construction defect suit involving the remodel of the Abraham Lincoln High School located in San Francisco, California.  The San Francisco Unified School District ("the District") hired Scottsdale's named insured, J.D.S. Builders Group, Inc. ("JDS") to, among other things, paint the exterior of the high school.  JDS purchased a performance and payment bond from Travelers Casualty and Surety Company of America ("Travelers") covering this and other projects JDS performed for the District.

Before JDS completed its work, the District discovered that the exterior paint at Lincoln High School was delaminating.  The District withheld (and continues to withhold) approximately a $800,000 "retention", causing JDS to default on its payment obligations to various subcontractors.  The subcontractors filed collections actions against the District, and Travelers allegedly settled those actions for the sum of approximately $1.3 million.

The District has filed suit against JDS and certain other implicated trades in San Francisco Superior Court, seeking the cost of re-painting the school.  Scottsdale is defending JDS against the underlying action, which is set to go to trial this summer.  To date there have been no settlements and no dispositive rulings.

Despite the fact that Scottsdale has provided and continues to provide a complete defense to this claim, JDS initiated the present suit against Scottsdale alleging breach of the insurance contract and breach of the covenant of good faith and fair dealing.  JDS' suit is premised on two alleged breaches: (1) Scottsdale's failure to settle the underlying action; and (2) Scottsdale's refusal to defend Travelers as JDS' indemnitee.

On its face, JDS' complaint fails to allege a viable cause of action against Scottsdale for breach of contract or breach of the implied covenant of good faith and fair dealing for the following reasons:

- Under controlling California case law, an insured has no cause of action against an insurer for "failure to settle" unless and until a judgment has been entered; since no judgment has been entered, JDS cannot maintain a cause of action against Scottsdale for breach of the duty to settle (*Hamilton v. Maryland Cas. Co.*

1

309339.2 380.30895

(2002) 27 Cal.4th 718, 727);

- Scottsdale properly denied Travelers' tender of the defense of the subcontractors' collections suits, because: (a) Travelers was not entitled to a defense under the Supplementary Payments provisions (*See, Bernstein v. Consolidated American Ins. Co.* (1995) 37 Cal.App.4th 763); and, (b) in any event, the subcontractors' collections suits did not allege "property damage" caused by an "occurrence" (*Giddings v. Industrial Indemnity Co.* (1980) 112 Cal.App.3d 213, 217);

- Finally, because JDS has failed to allege a viable breach of contract claim, JDS cannot maintain its claim for breach of the covenant of good faith and fair dealing (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 36.).

Pursuant to the foregoing, Scottsdale respectfully request that this Court dismiss Scottsdale from this action, with prejudice.

## II.   **ALLEGATIONS**

Plaintiff alleges as follows:

### A.   **The Insured Performed Its Work During Summer 2010.**

In early 2010, the District hired JDS as the general contractor to work on a project titled the "Abraham Lincoln High School Summer 2010 Modernization Project" (the "Project"). (Complaint at ¶12.)  The purpose of the Project was to renovate the Abraham Lincoln High School, a public high school located in San Francisco, California (the "School"). (*Id.*)  The work included painting certain exterior parts of the School. (*Id.*)  JDS allegedly performed it work between April and October 2010. (*Id.* at ¶13.)

### B.   **In October 2010, The District Discovers The Alleged Defect.**

In October 2010, the District allegedly observed that a section of paint fell off of an exterior wall. (Complaint at ¶13.)  The District investigated the paint and allegedly discovered numerous exterior paint failures. (*Id.*)  Those failures allegedly included micro-cracks, paint sags and paint falling off from the various walls. (*Id.*)  The District notified JDS of the allegedly defective work, asserting that JDS was responsible for fixing it. (*Id.*)

///

MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF SCOTTSDALE'S MOTION TO DISMISS-
CASE NO. 3:15-CV-00297-VC

Selman Breitman LLP
ATTORNEYS AT LAW

309339.2 380.30895

**Selman Breitman LLP**
ATTORNEYS AT LAW

C.      **In August 2011, Scottsdale Agrees To Defend JDS Against The District's Pre-Suit Claim.**

As alleged, Scottsdale issued liability insurance to JDS (Policy No. BCS0022046, effective May, 2, 2010 through May 2, 2011 (the "Scottsdale Policy")). (Complaint at ¶8.)  Per the policy, Scottsdale agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (*Id.* at ¶9.)  Scottsdale's policy also provides that: "We [Scottsdale] will have the right and duty to defend the insured against any 'suit' seeking those damages." (*Id.*)  However, when Scottsdale defends a claim, it controls the defense and settlement of that claim: "We may, at our discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result." (*Id.*)

After the District demanded that JDS fix the paint, JDS, in turn, tendered the defense of the District's pre-suit claim to Scottsdale. (Complaint at ¶15.)  Scottsdale promptly retained defense counsel to investigate and defend the pre-suit claim. (*Id.*)  JDS alleges that despite defending the claim, "Scottsdale unreasonably failed and refused, and continues to fail and refuse, to resolve the SFUSD claim on behalf of JDS." (*Id.*)

D.      **JDS Fails To Pay Its Subcontractors.**

JDS alleges that upon discovery of the defective paint (but before it filed suit), the District withheld $800,000 owed to JDS for work already performed (referred to as a "retention"). (Complaint at ¶¶16 and 24.)  The District's withholding of the retention allegedly caused JDS to default on amounts owed to various subcontractors. (*Id.* at ¶17.)  The subcontractors made claims against the payment bond (issued by Travelers). (*Id.* at ¶18.)  JDS alleges that to date, Travelers has paid in excess of $1.3 million "under the surety bonds and additional sums in defense of claims of the SFUSD." (*Id.* at ¶18.)  This has allegedly resulted in a claim by Travelers against JDS pursuant to a contractual indemnity agreement that is part of the bond. (*Id.* at ¶20.)  This has also resulted in JDS being "unbondable" and therefore ineligible for other projects, negatively impacting JDS' business. (*Id.* at ¶26.)

///

///

309339.2 380.30895

E.      **In May 2013, The District Files Suit Against JDS.**

On or around May 28, 2013, the District filed suit against JDS and Scottsdale in the San Francisco Superior Court entitled *San Francisco Unified School District v. JDS Builders Group, Inc., et al.*, Case No. CGC-13-531742 (the "Underlying Action").   (Complaint at ¶21; RFJN at **Exhibit B**.) On September 11, 2013, the District filed its First Amended Complaint, which is the operative complaint in the Underlying Action. (RFJN, **Exhibit C**.)  As against JDS, the District alleges causes of action for breach of contract, breach of the covenant of good faith and fair dealing, declaratory relief and negligence.  Scottsdale was dismissed from the Underlying Action.

F.      **Causes Of Action.**

Based on the foregoing, JDS alleges that Scottsdale breached its insurance contract and breached the covenant of good faith and fair dealing.  JDS seeks an amount to be proven at trial and its attorneys' fees.

G.      **Summary Of Allegations.**

In sum, JDS alleges that in 2010 the District asserted a pre-suit claim against JDS for the exterior paint.  JDS tendered this pre-suit claim to Scottsdale for defense, and Scottsdale promptly appointed defense counsel to investigate and defend the claim.  During this pre-suit period, the District withheld funds, causing JDS to default on amounts owed to certain subcontractors.  The subcontractors, in turn, sought and obtained payment from Travelers, allegedly giving rise to an indemnity claim by Travelers against JDS.

In other words, JDS concedes that Scottsdale has defended, and continues to defend, JDS against this claim.  JDS further concedes that no judgment has been entered against it in the Underlying Action.  Given these allegations, and as discussed below, JDS cannot sustain its causes of action against Scottsdale for breach of the insurance contract or bad faith.

III.   **LEGAL STANDARD**

Pursuant to Federal Rules of Civil Procedure, rule 12(b)(6), a Court should dismiss a complaint if it fails to state a claim upon which relief can be granted.  Dismissal is proper where there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a

Selman Breitman LLP
ATTORNEYS AT LAW

309339.2 380.30895

cognizable legal theory." (*Balistreri v. Pacifica Police Dept.* (9th Cir. 1990) 901 F.2d 696, 699; *Robertson v. Dean Witter Reynolds, Inc.* (9th Cir. 1984) 749 F.2d 530, 534). A Court is to assume well-pleaded factual allegations are true, and then determine whether those facts plausibly entitle plaintiff to relief. (*Ashcroft v. Iqbal* (2009) 556 U.S. 662, 679.)

The Court is not to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." (*Daniels-Hall v. National Educ. Ass'n* (9th Cir. 2010) 629 F.3d 992, 998.) Nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." (*Papasan v. Allain* (1986) 478 U.S. 265, 286.) A complaint that relies upon "labels and conclusions, and a formulaic recitation of the elements of a cause of action" does not suffice to state a claim. (*Bell Atlantic Corp. v. Twombly* (2007) 550 U.S. 544, 555.)

To survive a motion to dismiss, a plaintiff needs to plead "only enough facts to state a claim to relief that is plausible on its face." (*Twombly*, 550 U.S. at 570.) This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and "where a complaint pleads facts that are "'merely consistent' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" (*Ashcroft v. Iqbal* (2009) 556 U.S. 662, 678 (quoting *Twombly*, 550 U.S. at 556–57).)

## IV.   DISCUSSION

### A.   Scottsdale's Duties Owed To JDS Under Its Policy.

Broadly speaking, a third party liability insurance policy (such as Scottsdale's) provides two main benefits:

> *Indemnification:* First, the insurer promises to pay on the insured's behalf (i.e., to indemnify the insured), up to the policy limits, the sums the insured shall become legally obligated to pay on account of specified risks.
>
> *Defense:* Second, the insurer promises to defend any suit against the insured alleging damages payable under the terms of the policy.

Croskey, Heeseman and Imre, Cal. Prac. Guide Ins. Lit. Ch. 7A § 7:4 (West 2013) (citing *Griffin Dewatering Corp. v. Northern Ins. Co. of N.Y.* (2009) 176 Cal.App.4th 172, 196).)

The duty to indemnify arises when the insured has a legal obligation to pay, typically

Selman Breitman LLP
ATTORNEYS AT LAW

5

309339.2 380.30895

1   through entry of a final judgment for a covered claim. (*Aerojet-General Corp. v. Transport*

2   *Indem. Co.* (1997) 17 Cal.4th 38, 56 ("It [the duty to indemnify] arises only after liability is

3   established and as a result thereof").)  Whether the policy covers the judgment depends on the

4   facts established at trial and the terms of the policy.  (*Id.*)  Thus, until there is a judgment entered

5   against an insured (or the matter is settled), and the judgment (or settlement) is covered by a

6   Scottsdale policy, there can be no duty to indemnify.

7          In summary, for Scottsdale to be in breach of its insurance contract, it must have

8   breached either a duty to defend, or a duty to indemnify.  As discussed below, JDS' complaint

9   fails to allege that Scottsdale breached either duty, and therefore the complaint fails to allege a

10   cognizable cause of action for breach of contract.

11          **B.      JDS Has Not Alleged A Breach of The Insurance Contract.**

12                  **(1)     JDS Concedes That Scottsdale Is Defending The Suit.**

13          JDS concedes in its complaint that Scottsdale is defending JDS against the District's suit.

14   (Complaint at ¶15.)  JDS has not alleged that Scottsdale is only defending part of the suit, or that

15   JDS has expended its own funds defending the suit.  Rather, JDS alleges that it tendered the

16   defense of this claim to Scottsdale pre-suit, and that Scottsdale has been defending the suit since.

17                  **(2)     JDS Cannot Allege That Scottsdale Breached A Duty To Settle Unless**

18                          **And Until A Judgment Is Entered.**

19          JDS's primary basis for its breach of contract claim is the allegation that Scottsdale has

20   failed to timely settle the District's claim.  (*See, e.g.*, Complaint at ¶35c (failing to indemnify JDS

21   against the claim); 35d (failing to indemnify JDS against the underlying action); 35f (failing to

22   promptly negotiate settlement).)  However, under controlling California law an insurer's breach

23   of the duty to settle (considered part of the duty to defend) is not actionable unless and until a

24   judgment is entered.  Furthermore, having accepted the defense of this claim, Scottsdale has the

25   contractual right to control defense and settlement of the claim.  JDS' claim is predicated on the

26   assumption that Scottsdale was obligated to immediately settle the District's claim without

27   mounting a liability defense.  JDS's claim is inconsistent with the policy language and

28   controlling law.

Selman Breitman LLP
ATTORNEYS AT LAW

309339.2 380.30895

1    In California, where an insurer is defending an insured, the insured cannot bring a cause

2  of action for breach of the duty to settle unless and until a judgment is entered.

3           If the insurer declines to settle and decides to go to trial and then
            obtains a judgment below the settlement offer or obtains a
4           complete defense verdict, then the insured would have no cause to
            complain, and the insurer would have no liability. **Until judgment**
5           **is actually entered, the mere possibility or probability of an**
            **excess judgment does not render the refusal to settle**
6           **actionable.**

7  (*Hamilton v. Maryland Cas. Co.* (2002) 27 Cal.4th 718, 727 (*quoting Safeco Ins. Co. v. Superior*

8  *Court* (1999) 71 Cal.App.4th 782, 788) (emphasis added).)

9    This rule follows from the nature of liability insurance.  Scottsdale insured JDS against

10  covered liability claims.  JDS has not been found liable, and may never be found liable.  Unless

11  and until JDS has been held liable, for a fixed sum, there is nothing for Scottsdale to indemnify

12  JDS against.  (*Id.* at 727-28 ("Until a judgment in excess of Maryland's policy has been entered

13  against VLP, or VLP otherwise has suffered some actual injury as a result of the alleged breach

14  of the covenant of good faith and fair dealing, the existence of actual damage to the insured

15  cannot be determined.")

16    This rule is consistent with Scottsdale's policy language, quoted in the Complaint, that

17  grants Scottsdale the right to control the defense.  (Complaint at ¶8.)  Courts have recognized a

18  defending liability insurer right to control the defense. (*James 3 Corp. v. Truck Ins. Exchange*

19  (2001) 91 Cal.App.4th 1093, 1106 (*citing Safeco Ins. Co. v. Superior Court* (1999) 71

20  Cal.App.4th 782, 789).) Control of the defense includes control of settlement. (*Id.*) The fact that

21  an immediate settlement of the claim might have benefited JDS' ability to bid on future projects,

22  or avoid this liability dispute, does not render Scottsdale's defense of this claim actionable. (*See*

23  *Western Polymer Technology, Inc. v. Reliance Ins. Co.* (1995) 32 Cal.App.4th 14, 27 ("[A]

24  liability insurance policy's purpose is to provide the insured with a defense and indemnification

25  for third party claims within the scope of the coverage purchased, and not to insure the entire

26  range of the insured's well-being.").)

27    JDS' claim against Scottsdale hinges on the allegation that Scottsdale had a duty to settle

28  the District's claim, before the District even filed its lawsuit.  For example, in paragraph 15 of the

**Selman Breitman** LLP
ATTORNEYS AT LAW

7

1  complaint, JDS alleges that "[D]espite having agreed to defend JDS, Scottsdale unreasonably
2  failed and refused, and continues to fail and refuse, to resolve the SFUSD claim on behalf of
3  JDS." JDS further alleges that: "Had Scottsdale honored the terms of the Scottsdale Policy and
4  provided the coverage afforded thereby to JDS, it would have promptly resolved the SFUSD
5  claim and Underlying Action on JDS' behalf." (Complaint at ¶35.)

6       Furthermore, all of JDS' alleged "damages" flow from Scottsdale's alleged breach of its
7  duty to settle. For instance, JDS alleges that Scottsdale's refusal to immediately settle the claim
8  resulted in JDS being unable to pay its subcontractors, leading to Travelers' $1.3 million
9  indemnity claim via the payment bond. Scottsdale's refusal to settle has also allegedly prevented
10 JDS from obtaining future work. In short, JDS's breach of contract case centers on Scottsdale's
11 alleged "failure to settle".

12      Yet, JDS alleges no policy language or legal principle that dictates that Scottsdale had a
13 duty to immediately settle the District's claim. To the contrary, JDS alleges that Scottsdale is
14 obligated to defend JDS; and Scottsdale is defending. Scottsdale is only required to indemnify
15 JDS against liability, and JDS has not been found liable for anything.

16      So long as Scottsdale is defending JDS against the Underlying Action, and liability is still
17 uncertain, JDS has no cause of action against Scottsdale for breach of contract. (*Hamilton v.*
18 *Maryland Cas. Co.* (2002) 27 Cal.4th 718.)

19  **C.    JDS Has Failed To Allege A Breach Of Contract Flowing From Scottsdale's**
20        **Refusal To Defend Traveler.**

21      JDS also alleges that Scottsdale owed Travelers a defense against the subcontractor's
22 collections claims under Scottsdale's policy. JDS further alleges that Scottsdale's refusal to
23 defend Traveler caused JDS to be liable to Travelers for the sum of $1.3 million (the alleged cost
24 of settling the subcontractor's collections claims). For all of the reasons stated below, JDS's
25 allegations fail to allege a plausible claim flowing from Scottsdale's denial of Traveler's defense
26 tender.

27  ///
28  ///

8

Selman Breitman LLP
ATTORNEYS AT LAW

309339.2 380.30895

#### (1)     A Payment Bond Is Not An "Insured Contract".

JDS alleges that Travelers was entitled to a defense under the Scottsdale policy's Supplementary Payments provisions.  This is incorrect.

Among other things, to qualify for a defense under the Supplementary Payments provision (quoted in the Complaint at paragraph 11), Travelers had to show that its payment bond is an "insured contract" as defined by Scottsdale's policy.  Under the Scottsdale policy (which uses standard form language) an "insured contract" is "[t]hat part of any other contract or agreement pertaining to your business ... under which you assume the tort liability of another party to pay for ... 'property damage' to a third person or organization." (*Golden Eagle Ins. Co. v. Insurance Co. of the West* (2002) 99 Cal.App.4th 837, 846 (quoting the standard form published by the Insurance Services Office, Inc.).) The California Court of Appeal has held that the indemnity agreement in a performance bond does not assume the "tort liability of another".  (*See, Bernstein v. Consolidated American Ins. Co*. (1995) 37 Cal.App.4th 763 (applying the same language and holding that the bond issuer's liability is not tort liability) (disapproved on other grounds in *Vandenberg v. Sup. Ct.* (1992) 21 Cal. 4th 815).)

Travelers had no tort liability at issue in this claim; the sole source of Travelers' liability is its payment bond.  Thus, the indemnity provision in Traveler's performance bond is not an "insured contract" under Scottsdale's policy.  Because its performance bond is not an insured contract, Travelers was not entitled to a defense from Scottsdale under the Supplementary Payments provisions.

#### (2)     The Subcontractor's Collections Claims Did Not Allege "Property Damage" Caused By An "Occurrence".

Additionally, to trigger coverage under Scottsdale's policy, the subcontractor's claims against Travelers had to allege liability for "property damage" caused by an "occurrence". (Complaint at ¶9.)  According to the complaint, the subcontractor's claims were based on nonpayment for work performed.  (*Id.* at ¶17 ("As a result of the loss of revenue caused by SFUSD's retention of payments due JDS, JDS was unable to pay its subcontractors for work performed under their subcontracts.  As a direct result, the subcontractors made claims under

9

Selman Breitman LLP
ATTORNEYS AT LAW

309339.2 380.30895

1  JDS' payment bonds for their respective projects or filed lawsuits directly against JDS in the San

2  Francisco Superior Court.").)   This type of claim (for economic harm caused by deliberate non-

3  payment) is covered by a standard liability policy such as Scottsdale's.

4       Under California law, economic loss (such as non-payment of a debt) is not "property

5  damage". (*Golden Eagle Ins. Corp. v. Cen-Fed, Ltd.* (2007) 148 Cal.App.4th 976, 987; *see also,*

6  *Giddings v. Industrial Indemnity Co.* (1980) 112 Cal.App.3d 213, 217 ("strictly economic losses

7  like lost profits, loss of good will, loss of use of anticipated benefit of a bargain, and loss of

8  investment, do not constitute damage or injury to tangible property…").)   Since the

9  subcontractor's suits alleged only an economic loss (failure to pay for work performed), they

10  alleged no "property damage" as defined by the Scottsdale policies, and so could not trigger

11  coverage.

12       Additionally, the subcontractor's claims also did not allege an "occurrence" (defined as an

13  accident).  Under California law, an accident refers to an unintended, unexpected or chance act.

14  (*St. Paul Fire & Marine Ins. Co. v. Sup. Ct. (County of Yuba)* (1984) 161 Cal.App.3d 1199,

15  1202.)  Where damage is the direct and immediate result of an intended or expected event, there

16  is no accident.  (*Shell Oil Co. v. Winterthur Swiss Ins. Co.* (1993) 12 Cal.App.4th 715, 741.)

17  Deliberate conduct does not result in an accident unless "…some additional, unexpected,

18  independent and unforeseen happening occurs that produces the damage." (*Quan v., Truck Ins.*

19  *Exch.* (1998) 67 Cal.App.4th 583, 600.)  JDS' deliberate non-payment of the subcontractors was

20  not an "occurrence" under California law.

21       In sum, based solely on the complaint allegations, Scottsdale properly denied Travelers'

22  defense tender under the supplementary payments provision.  Thus, Scottsdale's denial to

23  Travelers cannot form the basis of JDS' breach of contract claim against Scottsdale.

24       **D.     JDS Cannot Sustain A Bad Faith Claim Without A Viable Breach Of**

25              **Contract Claim.**

26       Because JDS cannot sustain its claim against Scottsdale for breach of contract, its claim

27  for breach of the implied covenant of good faith also fails. Without a breach of the insurance

28  contract, there can be no breach of the implied covenant of good faith and fair dealing. (*Waller*

10

1  *v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 36.)  Therefore, as a matter of law, if JDS'

2  breach of contract claim fails, so to must its claim for breach of the implied covenant of good

3  faith and fair dealing.

4  **V.    CONCLUSION**

5  Pursuant to the foregoing, Scottsdale respectfully submits that JDS has failed to state a

6  cognizable claim for breach of contract or breach of the covenant of good faith and fair dealing,

7  Scottsdale therefore requests that this Court dismiss Scottsdale from this action, with prejudice.

8

9  DATED:  March 4, 2015                         SELMAN BREITMAN LLP

10

11

12                                         By: _____
                                              JOSHUA S. LEACH

13                                            Attorneys for Defendant
                                              SCOTTSDALE INSURANCE

14                                            COMPANY

309339.2 380.30895